## TERRITORY v. HOUSE NO. 24.

First Division.   Ketchikan.   April 8, 1927.

No. 1005–KA.

**1. Nuisance ⟨key⟩82, 84—Disorderly House.**

Suit was begun by the assistant district attorney of the United States, in the name of the territory, "on the relation of the United States," to declare a bawdyhouse to be a nuisance, and to enjoin its maintenance by the occupant, under an act of the territorial Legislature (Laws 1919, c. 20).   On demurrer to the complaint, *held*, the complaint states a good cause of action, and that the United States district attorney was authorized to maintain the suit on relation of the United States.

**2. Nuisance ⟨key⟩77—Injunction to Abate.**

On suit by the United States attorney to abate a bawdyhouse as a nuisance, under the Territorial law (Laws 1919, c. 20), *held*, the suit maintained, house abated, and injunction granted, in force throughout the judicial district.

**3. Constitutional Law ⟨key⟩56—Enlarging Jurisdiction of Equity Court— Keeping Disorderly House Enjoined.**

There is no question but that it is within the authority of the Legislature of Alaska to enlarge the powers of an equity court, by empowering it to enjoin the maintenance of a nuisance, although the maintenance thereof may be a violation of a criminal statute.

**4. Territories ⟨key⟩20—Legislature—Power to Suppress Nuisances—Equity.**

It is within the power of the Legislature of Alaska to pass laws to suppress bawdyhouses as nuisances, by a suit in equity to enjoin their maintenance.

This action was commenced on the 20th day of January, 1920, by the assistant United States attorney for the First division, against one Dolly Arthur and House No. 24 on Creek street, in Ketchikan, Alaska, under chapter 20, Sess. Laws Alaska 1919, to declare said house a nuisance, on the ground that it was being maintained as a house of prostitution, and to enjoin the defendant Dolly Arthur from maintaining such nuisance in the building described, or at any other place within this division of the territory of Alaska.   On the 26th day of January, 1927, on motion of the assistant United States attorney, an order to show cause was issued by the court, requiring the defendant to appear before the court on Saturday, February 5, 1927, to show cause, if any she had, why she

⟨key⟩See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

should not be enjoined and restrained from conducting or permitting the continuance of the bawdyhouse nuisance at the place named as house No. 24, Creek street, in the city of Ketchikan. The defendant Dolly Arthur appeared and stated that on the 25th day of January, 1927, she moved out of said premises and vacated the same, and that the premises were vacant and securely locked, and that she would not occupy the premises for any other purpose whatever until the final determination of the action. On February 5, 1927, the day set for the hearing upon the order to show cause, a temporary restraining order was issued by the court, restraining the defendant Dolly Arthur from keeping or continuing a bawdyhouse at No. 24 Creek street, at Ketchikan, Alaska, or any other place within the judicial division known as Division No. 1, territory of Alaska.

On February 19 the defendant appeared generally by her attorneys, Duggan & McCain, and demurred to the complaint. The grounds of the demurrer are that the United States of America is not a proper or legal party relator, under the provisions of chapter 20, Session Laws of Alaska, 1919; that the assistant United States attorney is not authorized by the Session Laws of Alaska to bring the action in any capacity; and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and the defendant allowed five days to answer. On March 2 the defendant, by her attorneys, moved to strike from the complaint the words "on the relation of the United States of America," for the alleged reason that the United States of America is not authorized, under chapter 20, to prosecute or appear in any action as party relator, or in any other capacity at all, which motion was denied, and thereupon, on March 3, the defendant answered the complaint, denying each and every allegation of the complaint, except that the defendant owned and occupied, and was in possession, on January 20, 1927, of the premises known as house No. 24, Creek street.

Testimony was taken in the case on the same day; the testimony submitted by the plaintiff consisting of that given by the deputy marshals. No testimony was submitted on the part of the defendant.

H. D. Stabler, Asst. Dist. Atty., of Juneau, for the Territory.

Duggan & McCain, of Ketchikan, for defendant.

REED, District Judge. The testimony shows that house No. 24 Creek street, was a house of prostitution, and that Dolly Arthur was then maintaining the house described, and had been for some time past, as a house of prostitution, and that the defendant Dolly Arthur was a prostitute. Thereupon the court ordered and directed that the premises known as No. 24 Creek street be abated for one year.

The question was raised by the defendant as to the authority of the court to restrain the defendant Dolly Arthur from conducting the said nuisance in any place in the first judicial division of Alaska; her counsel maintaining that the act of the Legislature did not contemplate such action by injunction. The act in question (section 2) provides that:

"Whoever shall erect, establish, continue, maintain, use, own or lease any building, erection or place used for the purpose of lewdness, assignation or prostitution or any other immoral act, is guilty of maintaining a nuisance, and the building, erection or place, or the ground itself, either public or private, in or upon which, or in any part of which such lewdness, assignation or prostitution is conducted, permitted or carried on, continued or exists, and the furniture, fixtures, musical instruments and contents are also declared a nuisance, and shall be enjoined and abated as hereinafter provided."

Section 3 authorizes an equity action to be commenced by the United States attorney, or by any citizen of the judicial division, to perpetually enjoin the nuisance, the person conducting or maintaining the same, and the owner, lessee, or agent of the building or ground upon which said nuisance exists. Then follow provisions for a temporary injunction after hearing. At the end of the section is this significant clause:

"When an injunction has been granted, it shall be binding on the defendant throughout the judicial district in which it was issued, and any violation of the provisions of injunction herein provided shall be a contempt as hereinafter provided."

Section 4 provides for the trial of the case, and that, if the complaint is filed by a citizen, it shall not be dismissed, except upon approval by the district attorney. Section 5 provides for the manner of trial for a violation of any injunction granted under the provisions of the act, the manner in which the proceeding shall be conducted, and the penalty for violation of the injunction. Section 6 provides for the abatement of the

premises and the removal from the building of the fixtures, furniture, musical instruments or movable property used in conducting the nuisance; also for the sale thereof, and the closing of the building or place against use for any purpose for the period of one year. Section 7 provides for the disposition of the proceeds of the sale of the personal property provided in section 6. Section 8 provides for the cancellation of the order of abatement at the request of the owner, upon certain conditions to be complied with by him. Section 9 provides for a lien on the building in case the owner is guilty of contempt of court.

From a consideration of the act, it is apparent that it has a twofold application, namely, a personal injunction against setting up, maintaining, or conducting a nuisance of the character described, the injunction operating in futuro, and the abatement of the building where the prescribed nuisance is being carried on. The provision of the statute that the person conducting a place used for the purposes denounced is guilty of a nuisance, and that injunction may issue against such person, taken in connection with the clause that the same shall be binding throughout the judicial division wherein it was issued, evidently means that any person may be enjoined from establishing a place for the purpose denounced by the statute. This construction is necessary, under the well-known rule of statutory construction that, if possible, effect shall be given to every part of the statute. The clause that the injunction shall be binding throughout the judicial division would be meaningless, unless such construction be given to the statute.

The question is raised that such construction would transgress or encroach upon the criminal jurisdiction of the court as enjoining the commission of a crime. There is no question but that it is within the authority of the Legislature to enlarge the powers of an equity court by empowering it to enjoin the maintenance of a nuisance, although the maintenance thereof may be a violation of the criminal statute. In Eilenbecker v. District Court of Plymouth County, 134 U. S. 31, 10 S. Ct. 424, 33 L. Ed. 801, it appears that an act prohibiting the manufacture of intoxicating liquor provided that, in case of a violation of the act, a court of equity might issue an injunction, enjoining the violation and punishing its violation as for contempt. The court therein said:

"If the objection to the statute is that it authorizes a proceeding in the nature of a suit in equity to suppress the manufacture and sale of intoxicating liquors which are by law prohibited, and to abate the nuisance which the statute declares such acts to be, wherever carried on, we respond that, so far as at present advised, it appears to us that all the powers of a court, whether at common law or in chancery, may be called into operation by a legislative body for the purpose of suppressing this objectionable traffic; and we know of no hindrance in the Constitution of the United States to the form of proceedings, or to the court in which this remedy shall be had. Certainly it seems to us to be quite as wise to use the processes of the law and the powers of the court to prevent the evil, as to punish the offense as a crime after it has been committed."

In my view, the intention of the Legislature of the territory of Alaska, as disclosed by the act in question, was to suppress houses of lewdness and prostitution, and to prevent persons from maintaining or conducting such houses, either at the place where it was being maintained or at any other place throughout the judicial division; also to abate the nuisance then existing, by closing up the same for the period of one year. This was within the power of the Legislature, and, the evidence being clear that the house described was maintained by the defendant Dolly Arthur as a nuisance, there is no discretion in the court under the statute but to issue the injunction as prayed for, and also to order the abatement of the nuisance. It follows, then, that the injunction should issue, enjoining the defendant Dolly Arthur from setting up, erecting, or maintaining a house or place for the purpose of lewdness or prostitution throughout the judicial division; and it is further ordered that the house or place described in the complaint be abated and closed for the period of one year from the date of the entry of this decree, and that the personal property be disposed of as provided for in the statute.

Let findings of fact and decree be prepared accordingly.