## UNITED STATES v. DACHIS.

District Court, S. D. New York. December 30, 1929.

Charles H. Tuttle, U. S. Atty., and Thomas J. Curran, Asst. U. S. Atty., both of New York City.

David P. Siegel, of New York City, for defendant.

GODDARD, District Judge. This matter comes before the court on two orders to show cause: One initiated by the United States At-

torney of this district, requiring Dachis to show cause why he should not be punished for criminal contempt because of his alleged perjury before the grand jury in his attempt to obstruct the due course of justice; the other requiring the United States Attorney to show cause why the original order to show cause should not be dismissed on the ground that the court had no jurisdiction to entertain the proceeding, and that the affidavits upon which it was based did not set forth facts constituting a contempt of court.

In the affidavits in support of the original order to show cause it is set forth that in the course of an investigation conducted by the October, 1929, federal grand jury for the Southern District of New York, it became material for it to locate and have produced before it certain books of account of Herman Hide & Fur Company, Inc., with vouchers covering the period from January 1, 1929, to May, 1929; that Dachis, when examined as a witness before the grand jury in its effort to locate and to obtain them, testified that the said books and vouchers were then in Winnipeg, Canada, having been taken there by an officer of the Herman Hide & Fur Company, Inc.; and that therefore he (Dachis) did not have possession of the books and could not produce them as directed to by the foreman of the grand jury, as they were then in Canada, nor comply with a subpœna duces tecum which had been served upon him. This testimony was repeated on two subsequent days when he was again called before the same grand jury, while the truth was that the said books were not in Canada, but were in this district as Dachis well knew, and were then in his possession or under his control. This October grand jury before whom he appeared as a witness has been finally discharged.

Section 268 of the Judicial Code (title 28 USCA § 385) reads as follows: "§ 385 (Judicial Code, section 268.) Administration of oaths; contempts. The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts. (R. S. § 725; Mar. 3, 1911, c. 231, § 268, 36 Stat. 1163.)"

If the facts alleged in the affidavits of the United States Attorney are sustained, it seems to me beyond question that Dachis' act constituted a direct contempt of court for which he may be punished and should be punished, for here was a deliberate effort to obstruct the due course of justice by circumventing the grand jury in its effort to locate and examine books and records material to its investigation.

That the court has the inherent power to punish one who disregards and flaunts its orders and authority is settled. For without such power it could not administer public justice. Bessette v. Conkey, 194 U. S. 337, 24 S. Ct. 665, 48 L. Ed. 997; Loubriel v. United States (C. C. A.) 9 F.(2d) 907; United States v. Collins (D. C.) 146 F. 554.

Although defendant may also be liable for perjury, that does not prevent his act from being treated as a criminal contempt. Ex parte Savin, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150; Ex parte Hudgings, 249 U. S. 378, 39 S. Ct. 337, 63 L. Ed. 656, 11 A. L. R. 333.

"The power of the court to treat as a criminal contempt a persistent perjury which blocks the inquiry is settled by authority in this circuit." U. S. v. Appel (D. C.) 211 F. 495.

See, also, In re Fellerman (D. C.) 149 F. 244; In re Ulmer (D. C.) 208 F. 461; In re Steiner (D. C.) 195 F. 299.

The grand jury is an appendage of the court, and proceedings before it are regarded as being in the presence of the court. Contempts occurring there are treated as taking place in the presence of court and are included in the class referred to as "direct" contempts. Ex parte Savin, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150; United States v. Carroll (D. C.) 147 F. 947; United States v. Huff (D. C.) 206 F. 700.

A direct contempt or one committed in the presence of a court may be disposed of in a summary proceeding, and a defendant is not, as contended by counsel for defendant, entitled to a trial by jury. Eilenbecker v. District Court of Plymouth County, 134 U. S. 31, 10 S. Ct. 424, 33 L. Ed. 801; In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092; Tinsley v. Anderson, 171 U. S. 101, 18 S. Ct. 805, 43 L. Ed. 91; Ex parte Bick (C. C.) 155 F. 908; M'Courtney v. U. S. (C. C. A.) 291 F. 497; In re Fellerman (D. C.) 149 F. 244; In re Shear (D. C.) 188 F. 677; Merchants' S. & C. Co. v. Board of Trade of Chicago (C. C. A.) 201 F. 20.

If it is found that the respondent has been guilty of contempt, he may be sentenced to jail for a definite term—not for the pur-

pose of coercing him to produce anything before the grand jury or to disclose to it the whereabouts of the books. The October grand jury, which was conducting the investigation, has passed out of existence, so any idea of compelling him to do anything, in so far as that grand jury is concerned, is now out of the question. The object of this contempt proceeding is to punish him for his alleged efforts to prevent the grand jury from securing the information and records as an aid to its investigation. In other words—for obstructing the due course of justice.

Where a witness is in contempt for failure to produce books before the grand jury or for refusing to perform a duty to it, he may be imprisoned in an effort to coerce him to comply with the order of the court. However, in such a proceeding, he may not be committed beyond the time when the grand jury is finally discharged, for then it becomes impossible for him to comply with its orders. But the expiration of the grand jury does not purge him of his contempt, and he may then be committed for a definite term as a punishment. Loubriel v. United States (C. C. A.) 9 F.(2d) 907; United States v. Collins (D. C.) 146 F. 554.

■ This is a criminal contempt as distinguished from a civil one, and burden is upon the United States Attorney to prove beyond a reasonable doubt that the defendant is guilty of the contempt charged against him. "Without deciding what may be the rule in civil contempt, it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." Mr. Justice Lamar in Gompers v. Buck's Stove & Range Co., 221 U. S. 418 at page 444, 31 S. Ct. 492, 499, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

For the reasons set forth above, the defendant's order to show cause is dismissed, and a hearing on the charge of contempt will be had upon a date to be set after conferring with counsel.